22 C. C. P. A. (Patents)

## In re COLVIN.

### Patent Appeal No. 3435.

Court of Customs and Patent Appeals.
April 29, 1935.

LENROOT, J., dissenting in part.

———◆———

McConkey & Smith, of Washington, D. C. (Stephen Cerstvik and N. D. Parker, Jr., both of Washington, D. C., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting claims 4, 12, 13, 17, 18, and 19 in appellant's application for a patent for an alleged invention relating to improvements in Pitot-static tubes.

Claims 4, 17, and 19 are illustrative. They read:

"4. In combination with a Pitot-static tube unit having a chamber with one end open to receive the impact of an air stream, of a heating device for maintaining said chamber free from ice or snow."

"17. A method of preventing the formation of ice and the packing of snow in a Pitot tube adapted for use in determining the velocity of an object moving through the air, which method consists in heating the relatively moving air as it passes through said tube."

"19. In combination with a Pitot tube having two chambers one of which is arranged to receive the impact of an air stream for transmitting velocity pressures, and the other of which is open to the surrounding atmosphere but unaffected by the air stream for transmitting static pressures, of a heating device associated with said first chamber for maintaining the latter free from ice or snow."

The references are:

Bristol, 1,240,790, Sept. 18, 1917.
Kilburn (British), 156,446, Jan. 13, 1921.
Badin (French), 607,407, Mar. 26, 1926.

It appears from the record that appellant was allowed thirteen claims, which define the particular structure disclosed in his application, including, as stated in allowed claim 20, a heating device "disposed concentrically with the inner wall of the velocity pressure chamber."

It may be said in explanation, that Pitot-static tubes are used on aircraft for determining the "air speed thereof." The subject-matter defined by the involved claims relates to a combination of such a tube and an electrical heating unit. The purpose of the heating element in the combination is to prevent the forming of ice or the packing of snow within the tube.

It is not denied by counsel for appellant that, with the exception of the electrical

heating unit, the patents to Bristol and Badin disclose appellant's combination, which, it will be observed, is claimed broadly in the appealed claims.

Accordingly, the sole question in the case is whether the combination, broadly, of an electrical heating unit, with a Pitot-static tube, as defined in some of the appealed claims, or the association of such a heating device with the "first chamber for maintaining the latter [chamber] free from ice or snow," as stated, for example, in claim 19, involves invention.

It appears from the patent to Kilburn that it is old to use an electrical heating unit to prevent the formation of snow or ice on gauges for liquids when used at low temperatures.

The Primary Examiner and the Board of Appeals pointed out that it was old to use heating coils in connection with carburetors, windshield wipers, hair driers, airplane wings, etc., in addition to such a unit for gauge glasses, as shown in the patent to Kilburn, and each of those tribunals was of opinion that, in view of those facts, it would not involve invention to utilize, broadly, an electrical heating unit, in combination with a Pitot-static tube, for the purpose of preventing the accumulation of snow, ice, and water therein.

Counsel for appellant contends that the references do not suggest the use of an electrical heating unit in combination with a Pitot-static tube; that those skilled in the art have long been confronted with the problem of overcoming the accumulation of moisture which would prevent the tube from functioning properly; that the patents to Badin and Bristol "attempted to solve the problem by providing structures whereby the ingress of moisture to the air-speed indicator was partially prevented. Nevertheless, several years elapsed after the issuance of the patents of record and nobody thought of solving the problem by constructing the Pitot tube in the manner defined in the claims now on appeal. It remained for appellant to solve the problem, which he did successfully by his invention. It would seem that if appellant's novel combination was so obvious to those skilled in the art as the Honorable Board appears to indicate by contending that no invention was involved in providing such a combination, it would have occurred to someone at an earlier date." It is further contended that the Air Forces of the United States Army and Navy, as well as those engaged in "commer-cial lines," recognized the difficulties and the problem which confronted appellant: that those connected with the Army Air Corps attempted to solve the problem by making "the tube so large that before it became inoperative due to ice formation the airplane became so crusted with ice that it became too heavy for its wings to sustain it in flight and the pilot had to descend to avoid a crash. Thus, as long as the pilot could keep his craft in the air the Pitot tube was operative. This solved the problem only temporarily because later, devices known as 'rubber shoes' were introduced which were placed on the wings of the airplane and were periodically inflated by air pressure thereby breaking the ice formation on the wings. Hence, the aircraft could then continue to remain in flight in inclement weather or at high altitudes without any danger of becoming overweight due to ice formation thereon. The Pitot tube troubles, however, again came into existence because even though the tube were large it eventually become clogged with ice and packed with snow inasmuch as the airplane was able to continue in flight without ice forming on the wings thereof. By providing a heating device for the Pitot tube, in accordance with appellant's invention, such clogging of the tube is eliminated because ice cannot form at the opening thereof or for that matter on any part of the tube."

Counsel for appellant further stated in their brief that when the officials of the United States Army Air Corps were informed by appellant that the chamber of the Pitot-static tube, which had one end open to receive the impact of an air stream, could be kept free from snow and ice, they inquired as to how it could be done, and that when informed by appellant that the problem could be solved by "placing a heating unit in the tube the officials stated their belief that this could not be done because the heating unit would obstruct the passage of air through the tube, thereby rendering the airspeed indicator connected thereto inoperative. Appellant, however, proved that this could be done and did do it, thus indicating invention and making a distinct step forward in the art." Counsel also contends that, although appellant has been allowed claims, for example 14 and 20, which define his combination, which includes a heating device associated, as stated in claim 14, "within said velocity head tube for preventing the collection of water, snow and ice therein," or, as stated in claim 20, "disposed concentrically with the inner wall of the

velocity pressure chamber for preventing the formation of ice on said Pitot tube," appellant is entitled to broader claims, which include a heating device in combination with a Pitot-static tube, without regard to whether it is "inside, outside, connected to or disconnected from the chamber," referred to in appealed claim 19, otherwise the claims of his patent could readily be avoided by placing the heating device outside the "chamber" without infringing appellant's patent. Counsel further contends that the alleged invention defined by the claims is new, useful, is not suggested by the prior art, is commercially successful, and, therefore, involves invention.

It may be conceded for the purpose of this decision that those skilled in the art were confronted with the problem of preventing the accumulation of water, ice, or snow in Pitot-static tubes used on aircraft; that appellant solved that problem by the utilization of an electrical heating coil in the velocity pressure chamber; and that his device is new, useful, and commercially successful. Nevertheless, such concessions do not necessarily warrant the allowance of the broad claims here on appeal.

The Patent Office, as has been hereinbefore stated, recognized that appellant had made an invention, and thirteen claims specific to the structure disclosed by him were allowed. It was pointed out by the tribunals of the Patent Office that it was old to use electrical heating coils to warm such objects as carburetors, windshield wipers, airplane wings, etc., and, as disclosed in the patent to Kilburn, to use such a heating device to prevent the formation of snow or ice on gauge glasses. Accordingly, they were of opinion that appellant's invention was not, broadly, the combining of a Pitot-static tube and an electrical heating coil,

but resided rather in the particular location of his electrical heating element in his combination, for which claims were allowed.

We find nothing of record to indicate that the prevention of the formation and accumulation of water, ice, or snow in a Pitot tube by the use, broadly, of an electrical heating element, in view of the facts of record, involves invention. The quoted statement of counsel for appellant, that officials of the United States Army Air Corps were doubtful of appellant's contention that a heating unit could be placed in the tube without obstructing the passage of air therethrough, is entirely consistent with the idea that, so far at least as the electrical heating coil is concerned, appellant's invention resided in placing such heating unit "concentrically with the inner wall of the velocity pressure chamber," as stated in allowed claim 20, or "within said velocity head tube," as stated in allowed claim 14.

It may be observed, furthermore, that practically all of the discussion by counsel for appellant relative to the problem confronting those skilled in the art, and the commercial success of appellant's invention is not based upon facts of record, but rather upon, what we assume to be, the personal knowledge of counsel. Assuming, however, the correctness of the statements made by counsel relative to those matters, we are, nevertheless, of opinion that appellant has been allowed claims commensurate with his invention, and that the tribunals of the Patent Office were right in holding that the appealed claims were not patentable.

The decision of the Board of Appeals is affirmed.

Affirmed.

LENROOT, J., dissents as to claims 17, 18, and 19.